**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   JUL _ 3 2014

WILLIAM W. BLEVINS
CLERK

**NOTICE OF ENTRY OF
JUDGMENT ACCOMPANIED BY OPINION**

OPINION FILED AND JUDGMENT ENTERED: 06/30/2014

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

No costs were taxed in this appeal.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

cc: Mark Edw. Andrews
Brad E. Harrigan I
Jack Edward Morris
Kenneth L. Tolar

13-1586 - Southern Snow Manufacturing v. SnoWizard Holdings
United States District Court for the Eastern District of Louisiana, Case No. 06-CV-9170, 09-CV-3394, 10-CV-0791, 11-CV-1499

Fee
Process
X Dktd
CRmDep
Doc. No.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**SOUTHERN SNOW MANUFACTURING CO., INC.,
PLUM STREET SNOBALLS, THEODORE
EISENMANN, RAGGS SUPPLY, LP, SPECIAL T ICE
CO., INC., VANS SNOWBALLS, PARASOL
FLAVORS, LLC, SIMEON, INC., AND SNOW
INGREDIENTS, INC.,**
*Plaintiffs-Appellants,*

AND

**BANISTER & CO., INC. AND
MILTON G. WENDLING, JR.,**
*Counterclaim Defendants-Appellants,*

AND

**DOTY MANAGEMENT, LLC,
JULIE K. DOTY, AND RON ROBINSON,**
*Counterclaim Defendants,*

v.

**SNOWIZARD HOLDINGS, INC.,
SNOWIZARD EXTRACTS, INC., AND
SNOWIZARD SUPPLIES, INC.,**
*Defendants,*

AND

## SNOWIZARD, INC., AND RONALD R. SCIORTINO,
*Defendants-Cross Appellants.*

---

2013-1586, 2014-1043

---

Appeals from the United States District Court for the Eastern District of Louisiana in Nos. 06-CV-9170, 09-CV-3394, 10-CV-0791, and 11-CV-1499, Judge Nannette Jolivette Brown.

---

Decided: June 30, 2014

---

MARK EDW. ANDREWS, Andrews Arts & Sciences Law LLC, of New Orleans, Louisiana, argued for plaintiffs-appellants and counterclaim defendants-appellants.

JACK E. MORRIS, of Metaire, Louisiana, argued for defendants-cross appellants. With him on the brief were KENNETH L. TOLAR, of Metairie, Louisiana, and BRAD E. HARRIGAN, Lugenbuhl Law Firm, of New Orleans, Louisiana.

---

Before PROST, *Chief Judge,* LOURIE, and CLEVENGER, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

A snowball is a confection of ice shavings, flavored with various syrups and typically served in a cone-shaped paper cup. This appeal arises from the conclusion of four consolidated lawsuits in the United States District Court for the Eastern District of Louisiana, involving members of every segment of the snowball industry from manufacturers of the icemakers and syrups to distributors to local

snowball vendors. The claims in this suit are numerous and diverse, spanning patents, trademarks, antitrust, and the Racketeering Influenced and Corrupt Organizations Act ("RICO"). We have jurisdiction under 28 U.S.C. § 1295(a)(1). For the reasons provided below, we *affirm-in-part*, *reverse-in-part*, *vacate-in-part*, *dismiss-in-part*, and *remand*.

PATENTS

I

Ronald R. Sciortino is the inventor of U.S. Patent No. 7,536,871 (the "'871 Patent") and No. 7,543,459 (the "'459 Patent"). He is also the owner of SnoWizard, Inc. (collectively with Sciortino and related entities, "SnoWizard"), to which he has exclusively licensed the patents.

Relevant to this appeal are the following issues: (1) invalidity and unenforceability of the '871 Patent due to the on-sale bar of 35 U.S.C. § 102(b) and, alternatively, for inequitable conduct; (2) invalidity and unenforceability of the '459 Patent for inequitable conduct; (3) various findings of infringement of the '871 Patent by Southern Snow Manufacturing Co., Inc. ("Southern Snow"), Banister & Co. ("Banister"), and Milton G. Wendling, Jr., owner of both Banister and Southern Snow; and (4) damages.

As explained below, we hold that the '871 Patent is invalid under the on-sale bar, reversing the District Court's conclusion to the contrary. We vacate the findings of infringement and the award of damages. We affirm the conclusion that the '459 Patent is not unenforceable for inequitable conduct.

II

The law of the on-sale bar is as follows:

The on-sale bar applies when two conditions are satisfied before the critical date: (1) the claimed invention must be the subject of a commercial of-

4      SOUTHERN SNOW MANUFACTURING v. SNOWIZARD HOLDINGS

fer for sale; and (2) the invention must be ready for patenting. An actual sale is not required for the activity to be an invalidating commercial offer for sale. An attempt to sell is sufficient so long as it is "sufficiently definite that another party could make a binding contract by simple acceptance." "In determining such definiteness, we review the language of the proposal in accordance with the principles of general contract law."

An invention is "ready for patenting" when prior to the critical date: (1) the invention is reduced to practice; or (2) the invention is depicted in drawings or described in writings of sufficient nature to enable a person of ordinary skill in the art to practice the invention.

*Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*, 726 F.3d 1370, 1374-75 (Fed. Cir. 2013) (citations omitted). Furthermore:

Whether a patent is invalid for a public use or sale is a question of law, reviewed *de novo*, based on underlying facts, reviewed for substantial evidence following a jury verdict.

*Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012) (citation omitted).

### III

Notwithstanding the legal dimensions of the on-sale bar inquiry, the District Court submitted the entire question to be adjudicated by the jury, which concluded that the '871 Patent was not invalid.[1] On motion for new

---

[1]      The question, as presented to the jury, recites:

trial or for judgment as a matter of law, Southern Snow argued that the undisputed facts show a commercial offer for sale of the invention before the critical date and that the invention was ready for patenting. Given these facts, Southern Snow argued that the District Court was obligated to invalidate the '871 Patent under the on-sale bar. The District Court disagreed, reasoning that "the jury reasonably found that [the burden of establishing invalidity] was not satisfied" and sustained the jury verdict as "not . . . against the weight of the evidence." *S. Snow Mfg. Co., v. SnoWizard Holdings, Inc.*, No. 06-CV-9170, 2013 WL 4007068, at *7 (E.D. La. Aug. 5, 2013) ("*JMOL Op. I*"). For the reasons stated below, we hold that the District Court erred in denying judgment as a matter of law.

On September 24, 2001, SnoWizard sent two technical sketches to its parts manufacturer, depicting parts SW1 and SW2:

Do you find by clear and convincing evidence that the claimed invention was on sale, the subject of a commercial offer for sale, or in public use before the "critical date" of February 6, 2003?

United States District Court for the Eastern District of Louisiana, Verdict Form 2 (Feb. 28, 2013).

6     SOUTHERN SNOW MANUFACTURING v. SNOWIZARD HOLDINGS



The manufacturer responded with a detailed quotation for each of the two parts, including a table of prices and quantities, tooling costs, and delivery time. This note, stamped "RECEIVED Oct 29 2001," explicitly invited SnoWizard to put in an order for the parts and specified the events that will take place after "we receive your order." Precision Metalsmiths, Inc., Quotation (Oct. 25, 2001). On January 17, 2002, the manufacturer sent another quotation, this time for the "COMPLETE MACHINED ASSEMBLY," that is, the "ASSEMBL[Y] [OF] MACHINED SW2 TO SW1." Precision Metalsmiths, Inc., Quotation (Jan. 17, 2002). At the bottom of the quotation was a hand-written note, "Both Parts Completely Machined and assembled!" *Id.*

Under traditional contract law principles:

An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.

RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981). No reasonable jury, presented with the evidence of such detailed quotations, could conclude that there was not an offer for the two parts or for the assembly.

The subsequent behavior of SnoWizard and the manufacturer further confirm the existence of an offer for sale sufficient to trigger the on-sale bar. The aforementioned quotations promised 2 samples of each part for approval, and these samples were shipped to SnoWizard on December 13, 2001. SnoWizard sent the manufacturer a letter stating that "[w]e have tested both parts and they have worked out well" but asked for "several minor adjustments." Letter from Ronald R. Sciortino to Tom Keitel

(Jan. 2, 2002). On October 12, 2002, SnoWizard submitted a purchase order for 400 SW1 parts at $3.58 each and 525 SW2 parts at $3.07 each, informing the manufacturer that it decided to put the parts together itself.[2] At this point, the parties have moved beyond offers and have concluded a contract.

In support of its conclusion that the on-sale bar was not triggered, the District Court reasoned simply that:

> [Sciortino] had not approved the sample of [the SW2 part] ... until December 23, 2002, and the manufacturer did not ship the first order of the part to SnoWizard until February 12, 2003.

*JMOL Op. I* at *6, and thus concluded that:

> the jury could reasonable [sic] conclude that it would have been impossible for the 'claimed invention' to have been on sale, the subject of a commercial offer for sale, or in public use before February 6, 2003. . . .

*Id.*

But as we have explained, "[a]n actual sale is not required for the activity to be an invalidating commercial offer for sale." *Hamilton Beach Brands*, 726 F.3d at 1374 (citation omitted). An offer is sufficient. The fact that the

---

[2]    To the extent that SnoWizard asserts that its purchases of the parts was for experimental use, buying 400 or more exemplars can hardly qualify as anything other than commercial use, especially when, as admitted to by SnoWizard itself, it has never sold more than 383 icemakers a year. Indeed, in a letter submission after the hearing, SnoWizard acknowledges that the purchase of the SW1 and SW2 are of a "production quantity."

manufacturer made the part and shipped it pursuant to previous quotations and purchase orders provides further evidence that there was a contract—of which an offer is a necessary prerequisite.

The remaining question is whether the subject matter of the transactions was "ready for patenting."

The Supreme Court has held:

> the invention must be ready for patenting. That condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

*Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998).

It cannot be argued, and SnoWizard does not so assert, that the parts SW1 and SW2 or the assembly were not "ready for patenting." Here, there were detailed drawings of the parts. SnoWizard itself wrote out, on the October 17, 2002 purchase order, how it would fit SW1 and SW2 together. The manufacturer clearly understood how to make the parts and how the pieces were to be put together. When offering to sell the assembly, it stated that it would "PROVIDE SET SCREW, ROLL PIN AND JAMNUT AND ASSEMBLE MACHINED SW2 TO SW1." Precision Metalsmiths, Inc., Quotation (Jan. 17, 2002). No reasonable jury could conclude that the ordinary artisan with the aid of SnoWizard's instructions would be unable to practice the parts or the assembly.

We therefore turn our inquiry to whether the SW1 and SW2 parts, purchased by SnoWizard on October 12, 2012, or the assembly of the two, offered for sale on January 17, 2012, constituted the patented invention.

10   SOUTHERN SNOW MANUFACTURING v. SNOWIZARD HOLDINGS

Claim 1 of the '871 Patent, taken here to be representative, recites:

1. A cam assembly for an icemaker having a pusher arm with ratchet teeth comprising:

a cam connector, the cam connector is adapted to be coupled to a handle of said icemaker; and,

a cam member having a single elongated structure that has a gradually tapering width from back to front, the back having a forked end pivotally coupled to said cam connector and the front having a second end, the second end has formed in a bottom surface thereof, a indented cavity for receipt of a ratchet tooth.

The patent provides an image of the claimed "cam assembly":



FIG. 2.

'871 Patent Figure 2. The "cam member" labeled 220, corresponds to SW1, and the "cam connector," labeled 250, corresponds to SW2.

On appeal, SnoWizard argues that the invention was "[a] cam assembly for an icemaker," not just SW1 or SW2. It maintains that "it would have been impossible to com-

plete the machining, finishing, and assembly of improved cam assemblies for installation in SnoWizard SnoBall Machines before March 2003 at the earliest" because the delivery of SW2 took place 6 days after the critical date. Appellee Br. 17.

As we have explained, "[g]enerally, the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). SnoWizard has not provided any persuasive reason why this general proscription should not apply. SnoWizard may not escape the consequences of the on-sale bar by mere recitation to the portion of the preamble referring to the "icemaker having a pusher arm with ratchet teeth."

The law only requires that the invention be "ready for patenting," that is, the "descriptions of the invention . . . were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67. It is not necessary for the assemblies or the part to be ready to be put into operation for the on-sale bar to apply. SnoWizard has utterly failed to point to any evidence as to what else, beyond the parts or the assembly, the ordinary artisan would need to practice the claimed invention.

Accordingly, the '871 Patent is invalid under the on-sale bar. We need not consider whether inequitable conduct renders it unenforceable. We vacate the findings of infringement and the award of damages.

## IV

Appellants seek a holding that the '459 Patent, which was not asserted by SnoWizard, is unenforceable for inequitable conduct.

The underlying patent application was allowed on March 12, 2007. On May 11, 2007, SnoWizard's then-patent attorney withdrew from representation at the USPTO for nonpayment, vouching that he "ha[d] notified [SnoWizard] of any responses that may be due and the

time frame within which [it] must respond." Seth M. Nehrbass, Request for Withdrawal as Attorney of Record (May 11, 2007). The application was deemed abandoned on June 13, 2007 for nonpayment of the issuing fee. On October 10, 2007, SnoWizard hired a new patent counsel. The petition to revive the abandoned application was signed by Sciortino on February 16, 2009, but it was not filed until March 3, 2009. When filing the petition to revive, Sciortino had to and did file a statement that the delay was unintentional. At trial, Appellants asserted that the delay could not have been unintentional and charged SnoWizard with lying to the USPTO.

The jury found for SnoWizard that there was no willful material misrepresentation in the revival of the application. Appellants challenge the jury verdict on appeal.

The only supporting evidence in favor of SnoWizard, according to Appellants, is the testimony of their patent expert on the subject matters of allowance, abandonment, and revival. However, they assert that the testimony should have been stricken because it was not in her expert report. They also maintain that the testimony is wrong.

SnoWizard argues that the District Court was within its discretion to permit the testimony concerning "routine PTO procedure" and that the contents of the expert's testimony were not wrong. Appellee Br. 19, 22. To further buttress the jury verdict, SnoWizard points to such evidence as the testimony by Sciortino that he never received the notice of abandonment from the USPTO.

We affirm the conclusion that the '459 Patent is not unenforceable for inequitable conduct. Regardless of any possible error connected with the contents or the admission of expert testimony, the jury was entirely free to credit Sciortino's testimony that he never knew the applications were abandoned and that the delay in prosecution

was unintentional. Appellants did not provide good reason to disturb the jury verdict.

TRADEMARKS

I

Southern Snow and Simeon, Inc. ("Simeon"), both owned by Wendling, asserted the Louisiana registered trademark of SNOBALL against SnoWizard. While the jury found that Southern Snow and Simeon owned a valid and enforceable trademark in SNOBALL, it also found that that SnoWizard did not infringe the mark and that the suit against SnoWizard was groundless, brought in bad faith, or brought for purposes of harassment. The District Court sustained the jury verdict. *JMOL Op. I,* at *9.

On appeal, Simeon and Southern Snow do not appeal the noninfringement verdict. Rather, they challenge the finding that the infringement claim was groundless. First, they contend that, because the jury upheld the validity of the SNOBALL mark, their claim for infringement cannot be groundless. Second, they assert that the finding of groundlessness cannot be reconciled with a jury verdict that their related state unfair competition claim was not groundless, brought in bad faith, or brought for purposes of harassment.

Southern Snow and Simeon's appeal lacks merit. As the District Court aptly observed, "it is entirely possible to have a valid trademark . . . and nevertheless file a lawsuit in bad faith or for purposes of harassment." *Id.* As to the alleged discrepancy between the findings of groundlessness with respect to the SNOBALL trademark claim and to the unfair competition claim, the District Court rightly stated that there may have been "better evidence in the jury's determination of . . . bad faith in filing trademark infringement claims." *Id.*

14   SOUTHERN SNOW MANUFACTURING v. SNOWIZARD HOLDINGS

Accordingly, we affirm the finding that the SNOBALL infringement claim was groundless, brought in bad faith, or for purposes of harassment.

## II

SnoWizard asserted a large number of trademarks against various Appellants. Most of the claims were resolved by consent judgment, and the jury was presented with infringement claims of only four marks, all federally registered. The table below presents the verdicts, broken down by the mark and the accused party:

| Mark | Valid and Enforceable | Accused Infringer | Infringement | Remedy |
|------|------------------------|-------------------|--------------|--------|
| CAJUN RED HOT | Yes | Southern Snow | Yes, Willful | $500 in profits |
| | | Snow Ingredients, Inc. ("Snow Ingredients") | Yes, Willful | None |
| WHITE CHOCOLATE & CHIPS | Yes | Southern Snow | Yes, Willful | $500 in profits |
| | | Snow Ingredients | Yes, Willful | None |
| MOUNTAIN MAPLE | Yes | Southern Snow | Yes, Willful | $200 in profits |

|  |  | Snow Ingredients | Yes, Willful | None |
|---|---|---|---|---|
| SNOSWEET | Yes | Parasol Flavors, LLC ("Parasol") | Yes, Willful | $100 in profits |

On motion for a new trial or for judgment as a matter of law, the District Court found that substantial evidence supported the verdicts that the use of the marks by Southern Snow, Snow Ingredients, and Parasol (collectively, the "Accused Infringers") created a likelihood of confusion. *JMOL Op. I*, at *8. It noted that there was "evidence ... that Southern Snow used SnoWizard's trademarks on identical goods, and that Parasol used a colorable imitation of SNOSWEET on identical goods." *Id.* The Accused Infringers argued that they showed their house brands on the accused products, but the District Court did not find the defense persuasive because "evidence was presented that the flavors were asked for by name by customers who may not have seen the house brand displayed on the bottle[s]." *Id.*

The Accused Infringers appeal. They contend that, where there was no evidence of actual customer confusion and where the evidence shows that the parties all traded under their brand names, a jury finding of infringement is unreasonable. They maintain that they should not be found to infringe where, with the same type of evidence, SnoWizard was found not to infringe SNOBALL.

In response, SnoWizard cites to admissions that Southern Snow actually copied the trademarks of CAJUN RED HOT, WHITE CHOCOLATE & CHIPS, and MOUNTAIN MAPLE. As to Parasol's infringement of SNOSWEET, SnoWizard points to evidence that Parasol

copied the mark and that Parasol knew of SnoWizard's application for federal registration.

The District Court did not err in denying the Accused Infringers' motion for a new trial or for judgment as a matter of law. The Fifth Circuit has held:

> In determining whether a likelihood of confusion exists, we often consider these "digits of confusion": (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. "Courts also consider (8) the degree of care exercised by potential purchasers." The "digits of confusion" are not exhaustive, and no single factor is dispositive. "Actual confusion that is later dissipated by further inspection of the goods, services, or premises, as well as post-sale confusion, is relevant to a determination of a likelihood of confusion."

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012) (citations omitted).

The evidence pointed to by SnoWizard and relied on by the District Court fit squarely within the 2nd, 3rd, and 6th digits of confusion. The jury was free to conclude that the display of house brands is insufficient to prevent a likelihood of confusion.

Accordingly, we affirm the findings of infringement of SnoWizard's marks.

### III

Plum Street Snoballs ("Plum Street") asserted ORCHID CREAM VANILLA against SnoWizard. The jury found that the mark was valid, enforceable, and infringed,

and awarded $5,000 in lost profits. In the District Court, SnoWizard challenged the jury verdicts of validity and infringement. *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, No. 06-CV-9170, 2013 WL 3983886 (E.D. La. Aug. 1, 2013) ("*JMOL Op. II*"). The District Court concluded, after reviewing the testimony of the owner of Plum Street, that there was sufficient evidence for the jury to reach both conclusions. *Id.* at *8.

SnoWizard appeals the finding of the mark's validity. It also challenges the finding of infringement and asserts a defense of laches.

In support of its validity and infringement positions, SnoWizard primarily relies on the consent judgment, which Plum Street joined, that was reached the day before the jury rendered its verdict. In the document, Plum Street consented to a judgment that ORCHID CREAM VANILLA "be and hereby [is] declared generic for flavor concentrates for shaved ice confections or food flavorings." United States District Court for the Eastern District of Louisiana, Consent Judgment 1 (Feb. 27, 2013). SnoWizard asserts that its only use of the phrase "occurred in connection with the sale of its eponymous flavor concentrate," and that therefore it could not be found to have infringed. Appellant Rep. 3.

Plum Street asserts that, while the mark is generic as to flavor concentrates, it is not generic as to snowballs. It points to evidence of Plum Street's continuous use of the trademark since 1945 and of SnoWizard's intent to copy Plum Street's mark.

SnoWizard's cross-appeal fails. As the District Court found, Plum Street is "[a] vendor[] of snowballs at retail to the general public." *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 527, 533 (E.D. La. 2013). As a vendor of snowballs, it asserts a right to "ORCHID CREAM VANILLA snowballs." Am. Compl. ¶ 187. SnoWizard neither makes any effort to argue that

ORCHID CREAM VANILLA is generic with respect to snowballs nor shows how the jury improperly found it to have caused a likelihood of confusion with Plum Street's snowballs.

Furthermore, the jury's infringement finding is supported by evidence of SnoWizard's intent to copy Plum Street's flavor. Plum Street rightly attacks SnoWizard for using evidence of copying to argue in favor of verdicts of infringement of its own marks while appealing an adverse verdict of infringement that is in turn supported by evidence of copying.

There is therefore no reason to disturb the jury findings of validity and infringement concerning ORCHID CREAM VANILLA.

As to laches, SnoWizard asserts that Plum Street's suit should be barred because of a 13 year delay in the filing of suit, and contends that the trial court erred in not submitting the question to the jury. Plum Street responds that the question of laches has never been presented in the District Court and therefore is waived. In reply, SnoWizard points to the transcript record where it attempted to raise the issue before the District Court.

SnoWizard's laches defense has no merit. First, as this Court has held:

> As equitable defenses, laches and equitable estoppel are matters committed to the sound discretion of the trial judge and the trial judge's decision is reviewed by this court under the abuse of discretion standard.

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). The District Court never needed to submit the question to the jury. Second, the record shows that the District Court refused to consider the issue because SnoWizard failed to raise the question in the final pretrial order. The District Court did

not abuse its discretion in refusing SnoWizard's resort to this defense.

Accordingly, we affirm the findings of validity and infringement of ORCHID CREAM VANILLA.

## IV

15 U.S.C. § 1120 provides:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

Southern Snow, Parasol, and Simeon (collectively, the "§ 1120 Appellants") brought multiple § 1120 claims against SnoWizard based on its prosecution of various marks. The District Court on Rule 12(b)(6) motion dismissed those claims that were predicated on the prosecution of CAJUN RED HOT, CHAI LATTEA, COOKIE DOUGH, SWISS ALMOND COCO, TIRAMISU, ZEPHYR, and SNOBALLS (a trade dress design for a concession trailer), which, at the time, had not yet been registered. *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, No. 06-CV-9170, slip. op. at 5-8. (E.D. La. Aug. 17, 2010).

The § 1120 Appellants challenge the dismissal, urging that the statute does not require actual registration. They argue that they were prejudiced because some of the marks became registered in the course of the litigation and because they "were left with no relief and nothing to effectively challenge those 2 registrations." Appellant Resp. & Rep. 30.

SnoWizard responds with citations to a number of cases from district courts and  from the Seventh Circuit holding that actual registration is required for a § 1120 claim.

Whether a § 1120 claim may be asserted on the basis of a pending trademark registration is a question of first impression in both this Court and the Fifth Circuit. The Seventh Circuit is the only Circuit Court to have considered the question. Its reasoning for requiring actual registration is as follows:

> Section 38 tells courts to award damages to persons injured by a registration fraudulently procured in the PTO. Competing firms would be injured by the registration and use of the mark, not by the application itself. Registration does not create the right to use a mark, which comes from the association between the mark and the goods it denotes. *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 420–21, 36 S.Ct. 357, 363, 60 L.Ed. 713 (1916). . . . Registration makes it hard for new firms to use marks that represent related goods, and an "incontestable" registration, as its name suggests, puts the mark beyond challenge on the ground that it is "descriptive". 15 U.S.C. § 1065. Unless the PTO grants the application, however, the consequences of registration (as opposed to use) do not come to pass, and no damages are "sustained in consequence thereof". Firms might incur expenses to oppose the application, but as a rule legal fees are not "damages" in American law. Section 38 makes sense when "procure" is taken to mean "obtain" and little sense when taken to mean "apply for". Powerful legislative history might counterbalance this inference, but the only interesting history shows that many bills have been introduced proposing to penalize false applications, e.g., H.R. 6248, 69th Cong., 1st Sess. § 27 (1925), H.R. 2828, 71st Cong., 2d Sess. § 26 (1929), but that none has been enacted. From the first version of § 38 in 1870, 16 Stat. 198, 212 (followed by 21 Stat. 502, 504 (1881), 33 Stat. 724,

730 (1905), and then the Lanham Act in 1946), the law has consistently forbidden procuring registration by fraud and neglected the possibility of penalizing those who seek but [do] not get registration via fraud.

*Country Mut. Ins. Co. v. Am. Farm Bureau Fed'n*, 876 F.2d 599, 600-01 (7th Cir. 1989).

The Seventh Circuit's construction of § 1120 is persuasive. The § 1120 Appellants were not prejudiced when they were barred from asserting § 1120 claims based on SnoWizard's unregistered marks. SnoWizard may assert claims of infringement whether or not the underlying marks are registered. There is therefore no "consequence" arising from the applications themselves, even if the applications were fraudulently prosecuted in the USPTO. And should the trademarks become registered, the § 1120 Appellants could have amended their pleadings or filed a new suit.

We therefore affirm the District Court's dismissal of the § 1120 claims.

## V

The cast of Appellants include Southern Snow, Simeon, Snow Ingredients, Eisenmann, Parasol, Raggs Supply, LP ("Raggs"), and Special T Ice Co., Inc. ("Special T"). The District Court provided the following findings about their relationships:

1) "Southern Snow, Simeon, and Snow Ingredients are closely related entities that share common ownership by Milton G. Wendling, Jr.," 921 F. Supp. 2d at 542;

2) "Mr. Eisenmann sold his FLAVOR SNOW business to Southern Snow in 2006, and maintains a financial interest in the sale of Southern Snow and Snow Ingredients products," and "[his] participa-

tion in this lawsuit is by virtue of an ongoing financial arrangement between Southern Snow and Mr. Eisenmann and the sale of his FLAVOR SNOW business to Southern Snow," *id.*;

3) Special T and Raggs are "distributors of products at issue in this lawsuit that were manufactured by Southern Snow, Snow Ingredients and Parasol," *id.* at 543.

As of April 18, 2011, Southern Snow, Parasol, and Simeon (collectively, "Old Plaintiffs") were the only plaintiffs. *Id.* at 532. The District Court dismissed numerous claims they brought against SnoWizard for asserting its trademark rights. *Id.* at 535.

On June 24, 2011, Snow Ingredients, Eisenmann, Raggs, and Special T (collectively, "New Plaintiffs") became plaintiffs, also asserting claims based on SnoWizard's assertion of trademark rights. On the grounds that the facts alleged are the same and that the New Plaintiffs and the Old Plaintiffs were in privity with each other, the District Court granted summary judgment on a large number of claims, finding them duplicative of those that had been dismissed as to the Old Plaintiffs. *Id.* at 541, 42-43, 47.

New Plaintiffs assign error to the dismissal of their claims on duplicative grounds. They do not deny that the claims deemed duplicative are legally and factually the same as those dismissed on the merits as to the Old Plaintiffs. Rather, they argue that:

> The 2 manufacturers make things that the 2 distributors distribute and the 2 snowball stands purchase, but participating in the snowball business does not make all the participants in privity with each other.

Appellant Br. 51. New Plaintiffs point out, for example, that Raggs is located in a different state from all the other

SOUTHERN SNOW MANUFACTURING v. SNOWIZARD HOLDINGS   23

Appellants and has been separately sued by SnoWizard in unrelated trademark and patent suits. They contend therefore that Southern Snow and Parasol could not have represented their interests.

SnoWizard defends the dismissals, maintaining that manufacturers and distributors of the same goods are legally in privity with each other.[3]

This Court applies the law of the regional circuit when determining privity. *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007). The Fifth Circuit has held that:

> parties which are sufficiently related to merit the application of claim preclusion are in privity.

*Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1174 (5th Cir. 1992).

In *Transclean*, we held:

> It is important to recognize that under this standard [of privity, where privity is a label that expresses the conclusion that a particular nonparty in earlier litigation should be treated the same as a party to that litigation for claim preclusion purposes], a manufacturer or seller of a product who is sued for patent infringement typically is not in privity with a party, otherwise unrelated, who does no more than purchase and use the product. In other words, ordinarily such parties are not so

---

[3]   SnoWizard also argues that the issue was not raised in the District Court and was therefore waived. New Plaintiffs correctly point to their briefings before the District Court where they argued that they are not in privity with Old Plaintiffs.

closely related and their litigation interests are not so nearly identical that a patentee's suit against one would bar a second action against the other under the doctrine of claim preclusion.

474 F.3d at 1306.

The District Court did not err in finding that Snow Ingredients was the same party as Simeon and Southern Snow "based on the express legal relationship of shared ownership." 921 F. Supp. 2d at 542. It also did not err in finding that Eisenmann was, for purposes of the suit, the same party as Southern Snow and Snow Ingredients, given that his stake in the suit stems from his "financial interest in the sale of Southern Snow and Snow Ingredients products." *Id.* We therefore affirm the dismissal of Eisenmann and Snow Ingredients' claims as duplicative.

The question of privity as to Special T and Raggs, which are distributors of products made by Old Plaintiffs, is of a different nature. The District Court found that Special T and Raggs are "in an express legal relationship with [Old Plaintiffs] by virtue of the distributorship." *Id.* at 543.

As we have held in *Transclean*, with regard to questions of intellectual property infringement and invalidity, the person who buys an allegedly infringing product is not considered to be in privity with the person who sells him the product. As distributors, Raggs and Special T are persons who bought the allegedly infringing goods from the Old Plaintiffs, and, without more, cannot be considered "in privity" with the Old Plaintiffs.

Accordingly, the conclusion that Raggs and Special T are in privity with Old Plaintiffs "by virtue of the distributorship" is erroneous. *Id.* at 543. The District Court dismissed Counts 19-21, 24-27, 29-81, and 83-84 as duplicative. *Id.* at 547. We reinstate only a portion of the dismissed claims, namely, Counts 27, 33, 37, 41, 42, 50,

54, 68, 72, 74, and 84, for Raggs and Special T for the following reasons:

1) The District Court dismissed as to all Appellants with prejudice Counts 20, 26, 32, 34, 36, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, and 79, for damages for alleged fraudulent procurement of trademark registrations under 15 U.S.C. § 1120, La. Rev. Stat. 51:221, and La. Rev. Stat. 51:1409 for "[failure] to produce any evidence of a cognizable injury or ascertainable loss, or, for that matter, even respond to the instant motion on this issue," *id.* at 545, and Counts 19, 23, 25, 29, 51, 80-81, and 83, for unfair competition under 15 U.S.C. § 1125, La. Rev. Stat. 51:1409, Louisiana Civil Code Article 2315, and Texas Business and Commercial Code § 17.46, for failure to establish a tendency to deceive, *id.* at 548. Raggs and Special T have failed to appeal these dismissals;

2) Counts 21, 30, 35, 38, 43, 44, 45, 46, 47, 48, 49, 52, 56, 58, 60, 62, 64, 66, 70, 76, are for declaratory judgments of invalidity (federal or state) of the marks, ORCHID CREAM VANILLA, SNOBALL, HURRICANE, BUTTERCREAM, BUTTERED POPCORN, CAKE BATTER, COOKIE DOUGH, DILL PICKLE, GEORGIA PEACH, KING CAKE, MUDSLIDE, PRALINE, and TIRAMISU. SnoWizard gave up rights to all of these marks by consent judgment; and

3) Count 24 is an infringement claim of SNOW SWEET, which is asserted only by Parasol. Am. Compl. ¶¶ 937-39.

## ANTITRUST

Appellants brought claims against SnoWizard under the Clayton Act, 15 U.S.C. § 15 and § 26, the Sherman Antitrust Act, 15 U.S.C. § 2, Louisiana antitrust law, La.

Rev. Stat. 51:123, and Texas antitrust law, Tex. Bus. & Com. Code § 15.05, for:

> false patent marking of the entire ice-shaving machine, invalidity of Patent No. 7,543,459 and Patent No. 7,536,871, infringement of Plaintiffs' claimed trademarks ORCHID CREAM VANILLA and SNOW SWEET, and fraudulent assertion of rights in trademarks ORCHID CREAM VANILLA, SNOSWEET, SNOBALL, SNOBALL MACHINE, HURRICANE, MOUNTAIN MAPLE, BUTTER-CREAM, BUTTER POPCORN, CAKE BATTER, CAJUN RED HOT, COOKIE DOUGH, DILL PICKLE, GEORGIA PEACH, KING CAKE, MUDSLIDE, PRALINE, & WHITE CHOCOLATE & CHIPS . . . .

United States District Court for the Eastern District of Louisiana, Verdict Form 7 (Feb. 28, 2013). The District Court instructed the jury on the "five essential elements" that Appellants must prove:

1) a relevant geographic market and product market;

2) SnoWizard's anticompetitive conduct; and

3) SnoWizard's specific intent to achieve monopoly power;

4) a dangerous probability of achieving such monopoly power; and

5) the attempted monopolization, as established by the above four elements, was the proximate cause of damages to Appellants' businesses and properties.

The jury found for Appellants on the first three elements, but concluded that there was not a dangerous probability of achieving monopoly power. On appeal, Appellants attack the jury verdicts on two grounds. First, they maintain that the District Court improperly used the

SOUTHERN SNOW MANUFACTURING v. SNOWIZARD HOLDINGS   27

*Noerr-Pennington* doctrine to bar evidence that would support an antitrust theory premised on SnoWizard's patent and trademark filings, counterclaims, and litigation. The resulting evil, in Appellants' view, was that evidence of SnoWizard's 12 federal and 14 state applications for trademark registration were not put in front of the jury and that they were prejudiced by not having the ability to "link" these applications with the fraudulent prosecution of the '871 and '459 Patents.

Second, Appellants argue that Sciortino and SnoWizard's counsel improperly retracted stipulated sales data of SnoWizard's flavor concentrates at trial and thereby misled the jury as to the question of dangerous probability of monopolization.

We affirm the jury verdicts because, regardless of other arguments, Appellants failed to establish a dangerous probability of monopolization.[4]

The parties stipulated to the following sales figures of flavor concentrates:

| Mark | SnoWizard | Southern Snow | Parasol |
|------|-----------|---------------|---------|
| 2004 | $431,000 | $696,299 | |

---

[4]   We express no view as to whether all four of the Clayton Act, the Sherman Antitrust Act, Louisiana antitrust law, and Texas antitrust law require proof of a dangerous probability of monopolization, as the District Court had instructed the jury. Appellants do not challenge the District Court's articulation of the law, and we will proceed on the basis that they need to establish SnoWizard's dangerous probability of monopolization.

28    SOUTHERN SNOW MANUFACTURING v. SNOWIZARD HOLDINGS

| | | | |
|------|------------|-------------|------------|
| 2005 | | $730,474 | |
| 2006 | | $910,776 | |
| 2007 | $370,557 | $859,541 | $119,085 |
| 2008 | $783,517 | $889,180 | $130,714 |
| 2009 | $840,828 | $911,195 | $148,666 |
| 2010 | $855,587 | $1,046,079 | |
| 2011 | $989,840 | $1,191,196 | |
| 2012 | $1,000,531 | $1,328,598 | |

Joint Exhibit J-1 (Feb. 20, 2013).

SnoWizard retracted the stipulated sales figure for 2007 on Day 5 of the trial, when it asserted that the proper number is $600,847.73 instead of $370,557. Over Appellants' objections, the District Court permitted SnoWizard to restate its numbers.

Once the District Court gave SnoWizard its permission to retract its stipulations—which Appellants do not challenge on appeal and which we therefore do not review—it was up to them to discredit SnoWizard's testimony. That the Appellants failed to exploit the opportunity is not a reason for us to upset the verdict.

We therefore affirm the finding of no antitrust violation.

## RICO

### I

The District Court identified five categories of civil RICO claims brought by Appellants:

1) fraudulent assertion of patent rights;

2) fraudulent assertion of trademark rights with respect to 20 trade-marks;

3) fraudulent assertion of ETL certification for ice-makers;

4) extortion by sending 4 cease and desist letters to Southern Snow, Para-sol, and the Yellow Pages over 9 years, and by suing Raggs for trademark infringement, unfair competition, trademark dilution, and defamation; and

5) infringement of trademarks.

*S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 912 F. Supp. 2d 404, 412-13 (E.D. La. 2012) ("*RICO Op. I*").

On motion under Rule 12(b)(6), the District Court dismissed all these claims for failure to establish predicate acts of mail fraud, wire fraud, or extortion. *Id.* at 424. Relying on Fifth Circuit precedent, *St. Germain v. Howard*, 556 F.3d 261 (5th Cir. 2009), the District Court stated that Appellants "must plead a set of facts sufficient to plausibly establish the predicate criminal acts of mail or wire fraud," *RICO Op. I*, at 420.

Appellants challenge the dismissal of the first four categories of RICO claims. They take the position that the claims do not require predicate acts that were criminal. They assert that allegations of a "pattern of racketeering activity," not criminal activities, is sufficient to sustain their RICO claims. Appellant Br. 45. To the extent the District Court relied on the precedents of the Fifth Circuit, Appellants request this Court to "distinguish, disregard, or overrule" them. *Id.* at 43.

SnoWizard contends that a criminal predicate act is necessary to sustain a RICO claim. That Appellants failed to allege any criminal predicate act is, in its view, fatal to their RICO claims.

We affirm the dismissal of Appellants' RICO claims. As the Supreme Court stated:

> RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of *continued criminal activity.*

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (second emphasis added). To survive Rule 12(b)(6) dismissal, Appellants must therefore allege some sort of racketeering activity that "amount to or pose a threat of continued criminal activity." Appellants do not argue that any of the alleged predicate acts are actually criminal, and the District Court did not err in dismissing the RICO claims.

## II

SnoWizard moved the District Court for Rule 11 sanctions against Appellants and their attorney, Andrews, for asserting the RICO claims. The District Court denied the motion without prejudice, stating that it could not, "at this time," determine that the RICO claims are manifestly unwarranted or that the motive for filing the claims was for the purpose of harassment. *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, No. 06-CV-9170, slip. op. at 2 (E.D. La. Aug. 17, 2010) ("*RICO Op. II*"). It further explained that it denied the motion "[i]n the interest of encouraging professionalism and civility." *Id.* On cross-appeal, SnoWizard challenges the denial of sanctions.

We dismiss SnoWizard's cross-appeal. The District Court denied SnoWizard's motion without prejudice, and SnoWizard has reurged the motion, which, as SnoWizard confirmed to us at oral argument on June 5, 2014, remains pending. We express no view as to the appropriate-

ness of sanctions and will permit the District Court to adjudicate the merits in the first instance.

## CONCLUSIONS

We hold that the '879 Patent is invalid under the on-sale bar. Accordingly, we vacate the judgments of literal infringement, equivalents infringement, and willfulness, as well as the award of damages. We sustain the enforceability of the '459 Patent against the inequitable conduct challenge.

We reverse the dismissal of Counts 27, 33, 37, 41, 42, 50, 54, 68, 72, 74, and 84 as to Raggs and Special T and remand for further proceedings. We affirm the findings of the validity of ORCHID CREAM VANILLA with respect to snowballs and of the infringement of ORCHID CREAM VANILLA, CAJUN RED HOT, WHITE CHOCOLATE & CHIPS, MOUNTAIN MAPLE, and SNOSWEET. We further affirm the dismissal of Southern Snow, Parasol, and Simeon's § 1120 claims against SnoWizard for failure to allege registered trademarks.

We affirm the District Court's findings of no antitrust violation and its dismissal of Appellants' RICO claims. We dismiss SnoWizard's appeal of the denial of Rule 11 sanctions.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, DISMISSED-IN-PART, AND REMANDED**

## COSTS

No costs.